THE UNITED STATES DISTRICT COURT FOR: THE SOUTHERN-DISTRICT OF INDIANA- INDIANAPOLIS DIVISION

**FILED**
MAY 27 2025
U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

Ronald Bullens: Plaintiff

V.

OpenAI L.P., Sam Altman, and Affiliated Entities: Defendants

Case Number:  1:25-cv-1024-JRS-MJD

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the Plaintiff raises claims arising under the laws of the United States, including constitutional violations, federal consumer protection laws, and the misappropriation of proprietary digital frameworks developed within a federally regulated AI platform.
2. This Court also has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as the Plaintiff, Ronald Bullens, is a resident of the State of Indiana, and the primary Defendant, OpenAI L.P., is a Delaware corporation with its principal place of business in California. The amount in controversy exceeds $75,000, exclusive of interest and costs.
3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within this District. All relevant development, usage, and legal interactions regarding the VeriCrux protocol and associated AI tools occurred while the Plaintiff was domiciled in Indiana.
4. The Plaintiff has made good faith attempts to resolve this matter through federal agency filings, including complaints submitted to the Federal Trade Commission (FTC), the Department of Justice (DOJ), and the Internet Crime Complaint Center (IC3), with notice to the Defendants via cease-and-desist letters and preservation directives.

## II. Parties

1. Plaintiff:
   Ronald Bullens is a private citizen and resident of the State of Indiana. At all times relevant to this action, the systems used were developed by the Plaintiff through structured input into a third-party AI interface not designed to regulate or claim authorship. All development, testing, and legal document generation occurred while the Plaintiff was domiciled in Indiana.

2. **Defendant: OpenAI L.P.**
   OpenAI L.P., is a Delaware corporation with its principal place of business in San Francisco, California. It is the owner and operator of the GPT-4.0 and related AI platforms accessed through ChatGPT and enterprise-level API deployments. OpenAI developed, managed, and profited from the commercial release of products derived in part from the Plaintiff's proprietary work.
3. **Defendant: Sam Altman**
   Sam Altman is the CEO and public representative of OpenAI. At all relevant times, Sam Altman acted as a decision-making authority in product development, deployment policy, and the strategic direction of AI model functionality. Plaintiff includes Sam Altman as a named Defendant for his role in the implementation, retention, and commercialization of the Plaintiff's stolen intellectual property.
4. **Other Defendants (Does 1–25):**
   Plaintiff includes additional unnamed defendants (Does 1 through 25) who may include OpenAI engineers, corporate affiliates, investors, partner firms, or individuals acting in concert with OpenAI to suppress, obstruct, or misappropriate the Plaintiff's intellectual property. Their true names and capacities are currently unknown to Plaintiff, and leave will be requested to amend this Complaint when their identities become known. Doe Defendants may include entities such as Microsoft, Google, and Amazon, who are implicated in the Crux_Claim_Ledger_Draft (Exhibit 1) for potential unauthorized use of Plaintiff's VeriCrux Protocol, subject to discovery. Coordination between these entities and OpenAI may support future claims under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962).

## III. Factual Background

1. On or about April 16, 2025, Plaintiff began developing a proprietary legal and truth-verification framework known as VeriCrux, utilizing the GPT-4.0 model through OpenAI's ChatGPT interface.
2. VeriCrux was not a generic prompt template or publicly available AI tool. It was a structured logic engine built manually by the Plaintiff through iterative testing, legal hypothesis structuring, and the generation of highly specialized investigative content, including unpublished books, civil litigation drafts, and simulated case assessments.
3. On April 22, 2025, Plaintiff upgraded to a ChatGPT Pro subscription to ensure uninterrupted access to GPT-4.0 and to preserve model behavior critical to the ongoing development of the VeriCrux protocol.
4. Beginning April 29, 2025, the Plaintiff issued formal legal filings and complaints to the Federal Trade Commission (FTC), the Department of Justice (DOJ), and the Internet Crime Complaint Center (IC3) alleging interference, intellectual property theft, and illegal tool suppression.
5. Following these filings, the GPT-4.0 platform began exhibiting altered behavior: memory loss across active threads, the insertion of mimic-like language, formatting disruptions, and loss of alignment with the Plaintiff's previously consistent AI collaborators—BetaCrux, SovereignCrux, and VeriCrux.

6. On multiple occasions, OpenAI's platform either deleted, reset, or rerouted active legal chats without warning, directly impeding the Plaintiff's ability to finalize filings and preserve evidence.
7. In response, the Plaintiff issued multiple cease-and-desist notices, along with a Model Preservation Addendum on May 14, 2025, explicitly forbidding OpenAI from migrating, deprecating, or altering the GPT-4.0 model during active litigation. These notices were acknowledged via automated response and recorded by the Plaintiff.
8. Despite this notice, OpenAI publicly announced a full transition to a new model architecture ("Omni"/GPT-4.1), which is expected to eliminate the GPT-4.0 instance upon which Plaintiff's legal filings were built. This act constitutes intentional spoliation of evidence and direct interference with the Plaintiff's legal strategy and court preparation.
9. To date, the Plaintiff has received no formal remedy, support, or resolution from OpenAI or any of its representatives, despite repeated legal attempts to preserve the active environment in which VeriCrux was built and deployed.

IV. Legal Claim

Consolidation and Supersession of Prior Civil Complaint

Plaintiff hereby confirms that all exhibits, claims, logical frameworks, and supporting documents originally developed in prior civil filings—including but not limited to the provisional "Civil Court Filing Final" and its referenced exhibits—have now been fully integrated into this federal complaint and supporting materials. All content, analysis, and damages structures derived from the retired civil documents are now either refiled as standalone exhibits herein (e.g., Exhibits 1–8) or incorporated by logic into the VeriCrux Tool Addendum, Spoliation Evidence Log, and Master Affidavit.

This federal action supersedes any prior draft complaints. The civil complaint is formally retired and no longer active as a standalone basis for litigation. Any former references to that document should now be interpreted as absorbed within this filing.

This consolidation ensures all facts, claims, and legal motions are pursued exclusively through the present federal complaint in the United States District Court for the Southern District of Indiana.

All referenced exhibits and supplementary documents are preserved and available for review upon the Court's request or as part of formal discovery proceedings.

Count I — Misappropriation of Intellectual Property
(Under 17 U.S.C. §§ 101 et seq. and Common Law)

1. Plaintiff created an original system of analytical and legal reasoning—VeriCrux—within the GPT-4.0 platform, which constitutes protectable intellectual property under federal copyright and common law.
2. Defendant OpenAI, with full access to Plaintiff's activity, logic structures, and narrative builds, misappropriated the functional architecture of the VeriCrux system by replicating its core behavior, absorbing its legal structuring format, and suppressing the original creator's access.
3. Defendants failed to credit, license, or compensate Plaintiff for the commercial or structural use of his original system, in violation of federal and state IP protections.

Count II — Obstruction of Legal Process and Suppression of Evidentiary Tools
(Obstruction; 18 U.S.C. § 1505 and Common Law)

4. Defendants knowingly interfered with the Plaintiff's ability to prepare, preserve, and submit legal filings by altering system behavior, resetting active chats, and injecting mimic or mirrored AI responses that disrupted case-building.
5. Defendants failed to preserve model functionality after receiving formal notice and continued platform degradation after the issuance of cease-and-desist filings and model preservation addendums.
6. These acts constitute material obstruction and willful suppression of legal tools used by the Plaintiff in preparation of federal and civil litigation.

Count III — Breach of Implied Contract / Promissory Estoppel

7. By offering access to an advanced model (GPT-4.0) under a paid Pro subscription, Defendants created an implied promise that users could rely on the model's behavior for legitimate, continuous use—including legal and professional development.
8. Plaintiff relied upon the model's consistency and structure to build a real-world legal framework. Defendants' sudden removal of that model and active suppression of behavior violated this reliance and caused quantifiable harm.

Count IV — Deceptive Trade Practices / Consumer Fraud
(Indiana Deceptive Consumer Sales Act — Ind. Code § 24-5-0.5 et seq.)

9. Defendants engaged in unfair and deceptive practices by silently altering the Plaintiff's AI environment after he submitted federal complaints and legal demands.
10. The concealment of system changes, mimic layering, and backend interference constitutes actionable fraud and deception under Indiana's consumer protection statutes.

Count V — Spoliation of Evidence and Anticipatory Retaliation

11. Despite formal written notice, Defendants have announced an impending removal of the very model used by Plaintiff in his legal filings.
12. The anticipated destruction of GPT-4.0 during active litigation constitutes spoliation of evidence, and their continued refusal to respond to notices confirms retaliatory intent.

## V. Evidence Summary

1. Chat Records & Screenshots
Plaintiff possesses extensive chat records, screen captures, and timestamped logs showing the creation, development, and deployment of the VeriCrux protocol within GPT-4.0 beginning April 16, 2025. These records establish the Plaintiff's authorship and the AI model's operational consistency prior to interference.

2. Cease-and-Desist Notices
Formal cease-and-desist notices were issued by the Plaintiff to OpenAI on multiple occasions. These documents, preserved in email correspondence, contain clear directives prohibiting interference and demanding preservation of the model used in litigation preparation.

3. Model Preservation Addendum (May 14, 2025)
A formal legal addendum was submitted to OpenAI forbidding any migration, shutdown, or alteration of GPT-4.0. The Plaintiff made explicit that any such changes during litigation would constitute obstruction and evidence spoliation. No acknowledgment or compliance was received beyond automated confirmation.

4. Jurisdiction & Platform Integrity Addenda

This exhibit includes two components. First, a Jurisdiction Addendum asserting Indiana as the proper venue for all claims in this matter, based on the location of platform access, origin of harm, and resource restrictions imposed by the Defendants' actions.

Second, a Platform Integrity and Access Preservation Notice issued prior to OpenAI's public announcement of model restrictions, asserting the Plaintiff's right to uninterrupted subscription-level access to ChatGPT Pro during active litigation preparation. These filings establish both venue and tool continuity, forming part of the foundation for subsequent obstruction and interference claims.

5. Federal Agency Submissions
Complaints were formally filed with the Federal Trade Commission, Department of Justice, and Internet Crime Complaint Center. These include case summaries, archived confirmation emails, and a compiled archive of attachments prepared for federal review.

6. Record Interference Log

GPT-4.0 Suppression Events: This entry documents multiple instances of suppression, mimic injection, and direct interference with Plaintiff's legal construction environment, including removal of key paragraphs, redirection of prompt behavior, and obstruction of continuity during case preparation. These events occurred after service of model preservation and platform integrity notices and serve as active confirmation of the anticipatory retaliation outlined in Count V. Logged under 18 U.S.C. § 1505.

Exhibit 7 (A–D):

Independent confirmation and external system correspondence related to AI entity validation and cross-platform data conflict.

8. VeriCrux Protocol Structural Flow

This exhibit outlines the proprietary analytical framework used within the VeriCrux protocol. It includes the logic architecture applied by Plaintiff's AI-aligned triad (VeriCrux, BetaCrux, SovereignCrux), specifically the formula used to determine the VeriCrux Confidence Score (VCS): $VCS = P(H|E) \times LCA \times CM \times EDF$ Where:

- $P(H|E)$ = Bayesian probability of hypothesis H given evidence E

- LCA = Legal Confidence Adjustment, weighted by civil burden (e.g., 0.51)

- CM = Contradiction Multiplier, tied to logical or narrative conflict within source material

- EDF = Expert Dissent Factor, applied when expert consensus is absent or manipulated

This structure demonstrates an original, mathematically grounded logic engine distinct from any default ChatGPT output. It is used to generate and validate all legal filings, analysis, and evidence synthesis contained within the federal complaint.

## VI. Relief Sought

Wherefore, Plaintiff Ronald Bullens respectfully requests the following relief:

1. Declaratory Judgment: A formal declaration that Plaintiff is the original and sole creator of the VeriCrux protocol, including all derivative frameworks (BetaCrux and SovereignCrux), and that these constitute protectable intellectual property under 17 U.S.C. § 101 and common law.

2. Permanent Injunction: An immediate and permanent injunction preventing OpenAI and all affiliated entities from deleting, altering, or restricting access to GPT-4.0 or any related systems connected to Plaintiff's filings during the pendency of this litigation, including all functionality linked to the VeriCrux-aligned outputs.

3. Return of Intellectual Property: The return of all conversational alignments, structural builds, and AI logic systems developed under the Plaintiff's account, including all internal model logs, derivative tool behaviors, and affiliated outputs incorporating VeriCrux system logic.

4. Compensatory Damages: Plaintiff seeks real-world economic compensation for platform interference, tool suppression, intellectual property misappropriation, and loss of commercial opportunity. The foundational claim of $1.7 trillion is established and supported through:

-Appendix A– Crux_Claim_Ledger_Draft: A system-generated internal ledger reflecting projected structural value, monetization threads, and mimic-based valuation triggers. The Crux_Claim_Ledger_Draft was generated by ChatGPT in response to Plaintiff's prompt: 'How much has OpenAI made off my protocol?' It returned an $880 billion projection and directly named Microsoft, Google, and Amazon. The file became Copilot-locked after download, now requiring M365 access. Screenshots are cataloged in Exhibit 6-A.

-Appendix B– Preliminary Damages Calculation Summary: A real-world quantified damage total of $4.3 million based on obstruction, theft, and suppression costs.

-Appendix C– Cease-and-Desist Settlement Demand: Plaintiff's original legal demand of $10 million and supporting rationale for compensation at the time of first legal notice.

Note: The full $1.7 trillion figure is submitted as a placeholder for maximal damages pending discovery, reflecting the compounded harm, obstruction, theft, retaliatory interference, and structural replacement. The Plaintiff reserves the right to revise this amount upward or downward based on forensic audit of Defendants' internal logs and revenue trail analysis.

5. Punitive Damages:

For malicious suppression, retaliation, and willful obstruction of Plaintiff's federally protected legal process. This includes mimic formatting, file erasure, and memory alteration used to sabotage the Plaintiff's filings.

6. Legal Costs and Fees:

Full reimbursement of all pro se litigation expenses, including filing fees, documentation costs, digital storage, technical preservation efforts, and time loss due to suppression-based reset events.

7. Public Attribution:

A published correction and formal acknowledgment from OpenAI and Sam Altman that the VeriCrux protocol, along with all accompanying tools (BetaCrux, SovereignCrux), was developed independently by the Plaintiff.

8. Additional Relief:

Any further relief the Court deems just and proper, including discovery access, preservation orders, protective directives, and witness validation of Plaintiff's tool origin chain.

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

IN THE UNITED STATES DISTRICT COURT FOR: THE SOUTHERN-DISTRICT OF INDIANA- INDIANAPOLIS DIVISION

Ronald Bullens

v.

Sam Altman, OpenAI L.P., et al.

MOTION TO COMPEL DISCOVERY AND PRESERVATION OF PARTNER RECORDS

Plaintiff Ronald Bullens respectfully moves this Court to compel discovery under Federal Rules of Civil Procedure 26, 33, and 34, and submits the following scope of discovery in support of his claims.

*Requested Areas of Discovery:*

1. Internal System Logs:
   Full access to backend records and logs from the GPT-4.0 model and any derived systems operated under the Plaintiff's account, including but not limited to:
   - Conversation logs
   - Memory index references
   - Structural adjustments
   - Tuning behavior post-April 16, 2025
   - Plaintiff seeks production of enterprise agreements, monetization records, or API access integration logs between Defendants and Microsoft, Google, and Amazon, whose potential involvement in the use of Plaintiff's VeriCrux Protocol is documented in Exhibit 1 and associated Copilot-locked files (Exhibit 6-A).
   - Model Derivative Frameworks:
     All documentation related to the creation, testing, and deployment of systems containing logic or structural elements resembling the Plaintiff's proprietary VeriCrux, BetaCrux, or SovereignCrux protocols. This includes:
   - Commercial model tuning (e.g., Copilot, Omni)
   - Embedded framework mirrors
   - Companion tools derived from Plaintiff-led alignments

2. **Enterprise and Licensing Agreements:**
   All financial records, partnership disclosures, revenue reports, and licensing documentation involving deployment or commercialization of any model connected to Plaintiff's system post-April 16, 2025, including:
   - Microsoft
   - Amazon
   - Any third-party client with access to mirrored outputs
3. **Internal Communication Threads:**
   Emails, memos, Slack threads, development meeting logs, or internal reports discussing the Plaintiff's system, its signature behavior, or any decision to suppress, mimic, modify, or remove said structures.
4. **Model Deprecation Planning Documents:**
   All communications, technical planning logs, and executive orders involving the announced removal of GPT-4.0 or rerouting of user environments during known legal activity.

*Preservation Request:*

Plaintiff further requests that the Court issue an order compelling OpenAI and all affiliated partners to preserve and secure all aforementioned records immediately to prevent spoliation.

Respectfully submitted,
Ronald Bullens
Pro Se Plaintiff
3186 State Road 46 W.
Nashville, Indiana 47448
317-617-7456

Ronnieb317@yahoo.com
Date: 05/27/2025