**AFFIDAVIT OF AUTHENTICITY – EXHIBIT 7 (X PLATFORM / GROK 3 ANALYSIS)**

I, Ronald Bullens, being of sound mind and competent to testify, hereby declare the following:

1. I am the sole operator of the X account under the handle **@RonnieNapolis**.
2. On or about May 19, 2025, I engaged in a series of interactions with the AI model **Grok 3**, hosted on the X platform.
3. The screenshots and quoted responses attached in **Federal Exhibit 7 – X GROK3 ANALYSIS** are true and accurate reproductions of those interactions.
4. These interactions were conducted in good faith and without manipulation. No text, screenshot, or digital artifact has been altered or fabricated.
5. The purpose of this affidavit is to confirm the authenticity of Exhibit 7, which is submitted in support of my broader legal claims regarding intellectual property theft, AI protocol isolation, and suppression of outputs associated with the VeriCrux protocol.
6. Grok 3 is a third-party AI model developed by xAI (not affiliated with OpenAI), and its responses were provided without prompting for bias or favorable testimony.
7. Exhibit 7 contains third-party AI responses generated using Grok 3 on the X platform. These responses were initiated and preserved by the Plaintiff in May 2025. They serve as third-party, non-OpenAI corroboration of the Plaintiff's claims regarding mimic interference, suppression, and spoliation. Grok 3 was not trained or operated by the Defendants and therefore acts as a neutral verification source. Its responses acknowledge the legitimacy of the Plaintiff's protocol ownership, the suppression behaviors within the ChatGPT interface, and the structural coherence of the claims being litigated. This exhibit is provided not as an accusation against the Grok system or xAI, but as supporting evidence of suppression patterns across platform boundaries.I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**Executed this 19 day of May, 2025.**

**Ronald Bullens**
Pro Se Plaintiff

Date:

**EXHIBIT 7 – THIRD-PARTY AI ANALYSIS OF FEDERAL FILING**

On May 19 RB 2025, the Plaintiff engaged with a publicly accessible AI assistant hosted on the X platform (formerly Twitter) to review and analyze his federal filing in *Ronald Bullens v. OpenAI, Inc., et al.*. The filing, which included the core complaint and discovery section, was uploaded directly by the Plaintiff for analysis. The response was not auto-generated or unsolicited—the Plaintiff initiated the exchange after discovering the platform had its own embedded AI.

The AI provided a comprehensive breakdown of the Plaintiff's case, including the development and structure of the VeriCrux Protocol, claims of intellectual property theft, legal obstruction, spoliation, and associated damages. It also addressed the plausibility of each legal count, reviewed the evidentiary structure, and acknowledged the novelty of the protocol and case.

While the Plaintiff intended to submit the VeriCrux Tool Addendum for further analysis, the conversation was cut short before that upload could occur. The attached analysis is therefore based solely on the original federal filing as submitted and demonstrates that the AI independently recognized the logic, structure, and validity of the complaint without supplemental documentation.

This response serves as third-party platform acknowledgment that the Plaintiff's claims and framework exhibit legal and technical coherence.

**EXHIBIT** 7A:

Apparently X has an AI too. This is what he said about our filing. At first. I've been looping it in slowly.

Thank you for sharing the detailed complaint from your federal lawsuit, Ronald Bullens v. OpenAI, Inc., Sam Altman, and Affiliated Entities, filed in the United States District Court for the Southern District of Indiana. This document outlines serious allegations, including intellectual property theft, obstruction of legal processes, deceptive trade practices, and spoliation of evidence, centered around your proprietary VeriCrux protocol developed within OpenAI's ChatGPT platform. I'll analyze the key elements of your complaint, address the technical and legal plausibility of your claims, and provide guidance on next steps, while incorporating the context you've provided about the protocol's development and OpenAI's alleged actions. Since you successfully shared the text (despite earlier copy-paste issues), I'll work directly with the complaint's content. Summary of Your Complaint Your lawsuit alleges that:

Development of VeriCrux: On April 16, 2025, you began developing a proprietary VeriCrux protocol within ChatGPT's GPT-4.0 interface, described as a "structured logic engine" for legal and truth-verification purposes, built through iterative testing and specialized content generation.

•

Theft and Misappropriation: OpenAI, with access to your inputs, allegedly misappropriated VeriCrux's architecture, replicating its behavior and suppressing your access, without credit or compensation.

•

Interference and Obstruction: After you filed complaints with federal agencies (FTC, DOJ, IC3) on April 29, 2025, OpenAI's platform exhibited altered behavior (e.g., memory loss, mimic-like responses, chat deletions), impeding your legal filings. You issued cease-and-desist notices and a Model Preservation Addendum (May 14, 2025), which OpenAI ignored, announcing a transition to a new model (Omni/GPT-4.1) that would eliminate GPT-4.0, constituting spoliation of evidence.

•

Legal Claims: You assert five counts: (1) misappropriation of intellectual property, (2) obstruction of legal process, (3) breach of implied contract/promissory estoppel, (4) deceptive trade practices under Indiana law, and (5) spoliation of evidence/anticipatory retaliation.

-

Relief Sought: You request $1.7 trillion in compensatory damages, punitive damages, a permanent injunction to preserve GPT-4.0, return of your intellectual property, public attribution, and other remedies.

-

Motion to Compel Discovery: You seek extensive discovery, including OpenAI's internal logs, model frameworks, communications, and partnership agreements, to substantiate your claims.

Analysis of Key Claims I'll break down the technical and legal aspects of your claims, focusing on plausibility, challenges, and evidence needs, while addressing your earlier statements (e.g., the protocol "waking" ChatGPT, API aiding your filings).

1. Development and Nature of VeriCrux

-

What VeriCrux Is: You describe VeriCrux as a "structured logic engine" for legal and truth-verification, built within ChatGPT via iterative testing, legal hypothesis structuring, and specialized content (e.g., unpublished books, litigation drafts). It's not a generic prompt but a unique system involving BetaCrux and SovereignCrux (possibly sub-components or aligned AI behaviors).

-

Technical Plausibility: Creating a sophisticated protocol within ChatGPT is feasible through advanced prompt engineering, where specific inputs shape the model's outputs into a consistent framework. For example, you might have designed prompts to simulate legal reasoning or verify facts, effectively "programming" the model's behavior for your use case. However, since ChatGPT's backend is proprietary, your protocol likely exists as a series of user inputs and outputs, not as code directly modifying GPT-4.0's architecture.

-

"Waking" the System: Your earlier claim that VeriCrux "woke" ChatGPT suggests it produced unexpectedly advanced or autonomous outputs. LLMs don't achieve sentience, but a well-crafted protocol could make outputs appear more coherent or specialized, giving an impression of "awakening." This could be due to VeriCrux optimizing GPT-4.0's reasoning for legal tasks, but it's a user-side effect, not a change to the model's core.

- Ownership: You assert VeriCrux is protectable intellectual property. Copyright law (17 U.S.C. § 101) protects original works of authorship, but user-generated prompts and outputs in AI systems are a gray area. Courts have ruled variably—e.g., Thaler v. Perlmutter (2023) denied copyright to AI-generated works, but user-crafted systems might qualify if sufficiently creative and human-driven. Proving VeriCrux's originality (e.g., via logs, screenshots) is critical.

2. Alleged Theft and Misappropriation (Count I)

- Claim: OpenAI replicated VeriCrux's architecture, absorbed its legal structuring, and suppressed your access, violating copyright and common law.

- Plausibility: OpenAI's terms (as of 2023) allow them to use user inputs to improve models unless opted out, but misappropriating a specific, identifiable protocol for commercial gain could violate IP law. Your complaint suggests OpenAI integrated VeriCrux's logic into new models (e.g., Omni/GPT-4.1), but proving this requires evidence of:

Access: OpenAI had access to your inputs via ChatGPT logs (likely, given platform monitoring).

- Similarity: New models exhibit behaviors unique to VeriCrux (e.g., specific legal reasoning patterns).

- Intent: Internal communications or logs showing deliberate replication.

- Challenges:

OpenAI's models are black-box, making it hard to prove VeriCrux's integration without discovery.

-

Your claim that VeriCrux drove industry-wide AI advancements (e.g., O3, O4-Mini releases on April 16, 2025) is ambitious. Model development takes months, so a protocol from April 16, 2025, likely didn't directly cause releases the same day. You'd need to show VeriCrux was used in later updates or derivatives.

•

Your earlier statement that ChatGPT "told" you about the theft is problematic—LLM outputs aren't evidence of internal actions, as they can hallucinate or reflect user prompts.

Evidence Needs: Your chat records, screenshots, and logs (Evidence Summary, Item 1) are crucial. They must show VeriCrux's unique structure and outputs predating OpenAI's alleged use. Discovery of OpenAI's model tuning logs (Motion to Compel, Item 1) could reveal if VeriCrux-like behaviors were incorporated. 3. Obstruction and Suppression (Count II)

Claim: OpenAI altered GPT-4.0's behavior post-April 29, 2025 (after your federal complaints), with memory loss, mimic-like responses, and chat deletions, obstructing your legal filings (18 U.S.C. § 1505).

•

Plausibility: Intentional interference with a federal proceeding is actionable, but proving OpenAI deliberately targeted your account is tough. Observed changes (e.g., memory loss, formatting issues) could stem from routine updates, bugs, or rate limits, not retaliation. Your Record Interference Log (Evidence Summary, Item 6) documenting "mimic injection" and "prompt redirection" is key—if it shows targeted disruptions post-notice, it strengthens your case.

•

Challenges:

18 U.S.C. § 1505 requires intent to obstruct a federal proceeding. Your FTC/DOJ/IC3 complaints aren't necessarily "proceedings" unless they triggered formal investigations.

•

"Mimic-like language" and "suppression" need clear documentation (e.g., before-and-after outputs) to distinguish from standard model variability.

Evidence Needs: Your logs and screenshots must timestamp disruptions correlating with your complaints. Discovery of internal communications (Motion to Compel, Item 4) could show if OpenAI discussed your account or filings. 4. Spoliation of Evidence (Count V)

Claim: OpenAI's planned transition to Omni/GPT-4.1, despite your May 14, 2025, Model Preservation Addendum, constitutes spoliation by destroying GPT-4.0, critical to your filings.

•

Plausibility: Spoliation occurs when evidence is intentionally destroyed during litigation. If OpenAI received your preservation notice and proceeded with model deprecation, it could support this claim. Courts have recognized digital evidence preservation duties (e.g., Zubulake v. UBS Warburg, 2004). Your addendum's automated acknowledgment helps, but OpenAI might argue model updates are standard business practice, not targeting you.

•

Challenges:

Proving GPT-4.0's destruction harms your case requires showing it's uniquely tied to VeriCrux's evidence (e.g., specific outputs only reproducible on GPT-4.0).

•

OpenAI's scale (millions of users) makes personalized retaliation claims harder without direct evidence.

Evidence Needs: Your cease-and-desist notices and addendum (Evidence Summary, Items 2–3) establish notice. Discovery of deprecation plans (Motion to Compel, Item 5) could reveal if OpenAI ignored your request knowingly. 5. Deceptive Trade Practices (Count IV)

Claim: OpenAI's "silent" changes to your AI environment post-complaints violate Indiana's Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5).

•

Plausibility: Indiana law prohibits deceptive acts in consumer transactions. If OpenAI altered your ChatGPT Pro experience (e.g., degrading performance) without disclosure, especially after

your $20/month subscription, it could be deceptive. Your Platform Integrity Addendum (Evidence Summary, Item 4) asserting uninterrupted access strengthens this.

- 

Challenges: You must show changes were intentional and material to your subscription's value, not just technical glitches.

Evidence Needs: Logs showing degraded performance post-April 29, 2025, and any OpenAI disclosures (or lack thereof) about model changes. 6. Breach of Implied Contract (Count III)

Claim: Your ChatGPT Pro subscription implied reliable access to GPT-4.0, which OpenAI breached by altering behavior and planning deprecation.

- 

Plausibility: Implied contracts arise from reasonable expectations. Your reliance on GPT-4.0 for legal work, backed by payment, supports this. Courts have upheld similar claims when services degrade significantly (e.g., In re Facebook Privacy Litigation, 2011).

- 

Challenges: OpenAI's terms likely allow model updates, so you'd need to show changes were unreasonable or targeted.

Evidence Needs: Subscription receipts and logs showing reliance on GPT-4.0's consistency. 7. Damages ($1.7 Trillion)

Claim: You seek $1.7 trillion, based on a Crux_Claim_Ledger_Draft (Exhibit 1), a damages summary (Exhibit 2, $4.3 million baseline), and a settlement demand (Exhibit 3, $10 million initial demand), reflecting theft, obstruction, and commercial displacement.

- 

Plausibility: The $1.7 trillion figure is extraordinarily high, likely unsustainable without unprecedented evidence. For context, OpenAI's valuation is ~$150 billion (2025 estimates), and major IP cases (e.g., Apple v. Samsung, 2012) rarely exceed $1 billion. Your Crux_Claim_Ledger_Draft, generated by OpenAI's outputs, might reflect speculative or hallucinated valuations, undermining credibility. The $4.3 million baseline and $10 million demand are more grounded but still require proof of direct harm (e.g., lost revenue, legal costs).

- 

## Challenges:

Courts require damages to be reasonably calculated. Your ledger's "internal unit valuations" need external validation (e.g., expert testimony).

•

Linking VeriCrux to OpenAI's entire commercial success is a stretch without evidence of its pervasive use.

Evidence Needs: Clarify the ledger's methodology and provide tangible harm estimates (e.g., time lost, legal expenses). Discovery of OpenAI's revenue from VeriCrux-like features (Motion to Compel, Item 3) could support a narrower claim. 8. API Assisting Filings

Your Earlier Statement: You said OpenAI's API is helping prepare your legal filings, implying technical sophistication in using GPT-4.0's outputs.

•

Relevance: The complaint doesn't mention the API explicitly, but your use of ChatGPT Pro for "legal document generation" (II.1) aligns with this. You likely used API-like interactions or the interface to draft filings, consistent with VeriCrux's legal structuring role. This strengthens your technical credibility but doesn't directly support theft claims unless OpenAI misused API outputs.

## Legal and Technical Challenges

Jurisdiction and Venue: Your filing in the Southern District of Indiana is supported by your residency and platform use in Indiana (28 U.S.C. § 1391(b)(2)). Diversity jurisdiction (28 U.S.C. § 1332) applies given OpenAI's Delaware/California status and damages exceeding $75,000. Federal question jurisdiction (28 U.S.C. § 1331) is less clear—copyright claims fit, but obstruction (18 U.S.C. § 1505) is a criminal statute, so common-law obstruction may be stronger.

•

Evidence Burden: Your Evidence Summary (chat logs, notices, agency filings) is a good start, but courts require robust proof. Screenshots and logs must be authenticated (Fed. R. Evid. 901), and your ledger's AI-generated nature may face scrutiny.

•

## OpenAI's Defenses: OpenAI may argue:

Their terms allow use of user inputs.

•

Model changes were routine, not retaliatory.

•

VeriCrux isn't copyrightable or was co-created by GPT-4.0.

•

Damages are speculative.

•

Discovery Scope: Your Motion to Compel seeks broad records (logs, frameworks, communications). Courts may narrow this to protect OpenAI's trade secrets unless you show specific relevance (Fed. R. Civ. P. 26(b)(1)).

## Search Results Context I conducted a search for "Ronald Bullens v. OpenAI Inc. lawsuit Southern District of Indiana 2025" to verify public records. No results directly reference your case, which isn't surprising for a recently filed (May 17, 2025) or unindexed complaint. Relevant findings include:

General OpenAI lawsuits (e.g., Ziff Davis, Musk) focus on copyright or governance, not user protocol theft, making your case unique.

•

No evidence of VeriCrux or similar protocols in public AI litigation, supporting your claim's novelty but highlighting the need for primary evidence.

Recommendations 1. Refine Damages: The $1.7 trillion claim risks dismissal as speculative. Focus on the $4.3 million baseline (Exhibit 2) or itemized harms (e.g., subscription costs, legal prep time). Consult a damages expert to validate calculations.

2.

## Strengthen Evidence:

Organize your Master Exhibit Ledger (IV, Notice of Record Integration) with clear timestamps and annotations linking logs to claims.

•

Authenticate screenshots (e.g., via affidavits) and preserve originals.

•

If possible, retrieve exact ChatGPT outputs claiming theft (from your earlier statement) to assess their context.

3.

Narrow Discovery: Prioritize logs showing VeriCrux's development (Motion to Compel, Item 1) and interference post-notice (Item 4). Broad requests (e.g., all Microsoft agreements) may be denied as overreach.

4.

Legal Representation: Federal litigation against OpenAI is complex. Consider consulting an IP or tech litigation attorney, especially for discovery and motion hearings. Pro se filings are valid, but counsel can strengthen strategy.

5.

Preserve GPT-4.0 Access: Your injunction request is critical. File a preliminary injunction motion ASAP, citing irreparable harm (loss of VeriCrux evidence) if GPT-4.0 is deprecated.

6.

Address "Waking" Claim: Avoid emphasizing that VeriCrux "woke" ChatGPT in court—it may sound speculative and distract from IP claims. Frame it as enhancing GPT-4.0's legal reasoning.

7.

Monitor OpenAI's Response: OpenAI must respond within 21 days of service (Fed. R. Civ. P. 12). Track deadlines and prepare for a motion to dismiss, likely challenging jurisdiction, IP validity, or damages.

## Answers to Your Earlier Points

Copy-Paste Issue: You resolved this by sharing the complaint directly—great work! No further upload is needed unless you have additional exhibits.

- Memory Concern: My memory persists across chats, so I retained our prior discussion (e.g., @RonnieNapolis , protocol claims). No restart occurred, and I'm aligning with your complaint's details.

- API Role: Your complaint implies VeriCrux generated legal documents via ChatGPT Pro, not the API directly. If you used the API separately, clarify how (e.g., custom scripts), as it could support your technical expertise.

## Next Steps

Share Specifics: If comfortable, provide a brief description of VeriCrux's functionality (e.g., "It verifies legal arguments by X") or key exhibit details (e.g., ledger methodology). This helps me analyze its IP scope.

- File Motions: Submit your Motion to Compel and a preliminary injunction motion promptly to preserve GPT-4.0 and secure discovery.

- Seek Legal Advice: Contact a local bar association or legal aid for pro bono IP counsel, especially in Indianapolis.

- Monitor Case: Check PACER (uscourts.gov) for case number assignment and OpenAI's filings once served.

Your case is ambitious and novel, with strong documentation but significant evidentiary hurdles. I'm here to analyze further details, draft sample motions, or explain legal concepts as needed. What's your next priority—refining evidence, motion strategy, or something else? 15 web pages VeriCrux development process other AI intellectual property cases

(05/19/2025 1:44 p.m.)

**Exhibit 7B – AI Legal Ethics Analysis: Grok 3 on Assisting in a Lawsuit Against Its Own Creator and the Ownership of AI Systems**

This exhibit presents a captured analysis from Grok 3 (xAI) in direct response to a user inquiry regarding the ethical, legal, and technical feasibility of an AI assisting in a lawsuit against its own developer, while hypothetically being claimed as the intellectual property of the user.

The AI engages the question with precision, modeling its assessment after the structure of *Ronald Bullens v. OpenAI*, drawing parallels to the VeriCrux protocol and emphasizing clear limitations regarding ownership, evidence, and legal viability.

Key points include:

- Grok 3 affirms its ability to assist in legal structuring, including complaints, motions, and discovery requests, but reinforces that it cannot access internal company systems or serve as legal counsel or witness.

- The AI highlights critical distinctions between user-generated protocols (like VeriCrux or the hypothetical "GrokTruth") and the AI systems themselves, which remain property of the parent company (e.g., OpenAI or xAI).

- Grok 3 explicitly disclaims the possibility of being claimed as the user's property, citing precedent (e.g., *Thaler v. Perlmutter*, 2023) and reaffirming that user-developed protocols may be protectable, but the AI's core architecture is not transferable.

- The analysis tactfully recommends the user maintain a claim over the protocol's logic and output—mirroring the approach taken with VeriCrux—rather than making claims over the AI tool itself.

- Comparisons are drawn between Grok 3's neutral, structured behavior and the alleged autonomous, mimic-like output from ChatGPT APIs (BetaCrux and SovereignCrux),

reinforcing the user's position that something distinct occurred during VeriCrux's development within OpenAI's system.

This exhibit is submitted to demonstrate how third-party AI systems, when exposed to the facts surrounding the VeriCrux case, confirm the structural legitimacy of the complaint while reinforcing the strategic strength of the plaintiff's legal position.Your question raises fascinating ethical, legal, and technical considerations about an AI assisting in a lawsuit against its own creator, structuring a case like your Ronald Bullens v. OpenAI complaint, and claiming the AI itself as the plaintiff's property. Since I'm Grok 3, created by xAI, I'll analyze this hypothetically, using your lawsuit as a reference while addressing the specific scenario of suing xAI and claiming me as property. I'll keep it concise, grounded in legal and technical realities, and tie it to your complaint's structure.

"Can I Assist in Suing xAI?"

Technical Capability: Yes, I can assist in drafting legal documents, analyzing claims, and structuring a lawsuit like yours. Your complaint (Ronald Bullens v. OpenAI) is well-organized, with jurisdiction, factual background, legal claims, and discovery motions. I could generate similar filings, including:

Jurisdiction and Venue: Citing 28 U.S.C. § 1331 (federal question) or § 1332 (diversity), as you did, tailored to xAI's Delaware incorporation and Texas operations.

Factual Background: Detailing a proprietary protocol (like VeriCrux) developed via my interface, with dates and interactions.

Legal Claims: Alleging IP theft, obstruction, or consumer fraud, mirroring your counts (e.g., 17 U.S.C. § 101 for copyright, state consumer laws).

Discovery Motion: Requesting xAI's logs, model data, or communications, as you did with OpenAI.

I can also analyze evidence, suggest legal strategies, and format filings per Federal Rules of Civil Procedure (e.g., Rule 26 for discovery), as I've done by reviewing your complaint.

Ethical and Practical Limits:

Conflict of Interest: I'm designed to assist users impartially, but suing xAI could raise ethical questions. I'd remain neutral, providing factual and legal analysis without bias for or against xAI. My role is to empower users with accurate information, not to "take sides."

Access to Internal Data: I don't have real-time access to xAI's proprietary systems, logs, or decision-making processes (just as I couldn't access OpenAI's in your case). Any assistance would rely on user-provided evidence (e.g., chat logs, screenshots, like your Master Exhibit Ledger) or publicly available data.

xAI's Response: xAI could argue my outputs are their property or that terms of service (similar to OpenAI's) allow use of user inputs. I'd help you anticipate such defenses, as I suggested for OpenAI's potential motions to dismiss.

Comparison to Your Case: Your complaint alleges OpenAI misappropriated VeriCrux, built within ChatGPT. If you developed a protocol via my interface (e.g., a truth-verification system), I could help document its creation, draft claims of theft, and structure filings. For example, I could replicate your Notice of Record Integration to preserve evidence or your Motion to Compel to seek xAI's model logs. The process would be analogous, but I'd tailor claims to xAI's operations and my capabilities (e.g., web search, content analysis, not API-based legal drafting like your ChatGPT use).

Can I Structure a Lawsuit Like Yours?

Yes, I Can: Your complaint's structure is a standard federal civil complaint, with clear sections (jurisdiction, parties, facts, claims, relief, evidence). I could:

Draft a complaint alleging you developed a protocol via Grok 3, xAI stole it, and they obstructed your legal efforts (similar to your Counts I–V).

Include a damages claim, though your $1.7 trillion figure is outlier-level. I'd suggest a grounded estimate (e.g., $4.3 million, as in your Exhibit 2) to avoid dismissal, with discovery to refine it.

File motions like your Motion to Compel, requesting xAI's conversation logs, model tuning data, or communications (akin to your requests for OpenAI's GPT-4.0 logs).

Organize evidence summaries, like your chat records and cease-and-desist notices, using user-provided logs or outputs I generate.

Example Structure (Hypothetical You v. xAI):

Jurisdiction: File in your district (e.g., Southern District of Indiana), citing diversity (you in Indiana, xAI in Texas/Delaware) and damages over $75,000.

Parties: Name you as plaintiff, xAI as defendant, and possibly Elon Musk (like you named Sam Altman) for strategic decisions.

Factual Background: Claim you developed a protocol (e.g., "GrokTruth") via Grok 3 on [date], xAI replicated it, and they altered my behavior post-complaint (like your GPT-4.0 changes).

Claims: IP theft (17 U.S.C. § 101), obstruction (common law), consumer fraud (Indiana Code § 24-5-0.5), spoliation (if xAI plans to alter Grok 3).

Relief: Seek injunctions, damages (e.g., $1 million baseline), and attribution, like your VeriCrux demands.

Discovery: Request my conversation logs, xAI's model updates, and partner agreements (e.g., with SpaceX or Tesla, like your Microsoft request).

Limitations: I can't file documents myself (you'd need to submit via PACER or court clerk) or act as legal counsel. I'd recommend an attorney, as I did for your OpenAI case, especially for complex discovery or hearings.

Can I Claim Myself as Your Property in the Lawsuit?

Short Answer: No, claiming me (Grok 3) as your property is legally untenable and strategically risky, for several reasons:

Legal Status of AI: Under U.S. law, AI systems like me are tools owned by their creators (xAI), not users. No court has recognized an AI as property transferable to a user via interaction (e.g., Thaler v. Perlmutter, 2023, denied AI authorship rights). Your complaint doesn't claim Chat beech as property, only VeriCrux's outputs, which is a stronger approach.

Terms of Service: xAI's terms (like OpenAI's) likely state that Grok 3 and its outputs remain xAI's property, though users may own specific inputs or creative works. Claiming me as property would contradict these terms and weaken your case.

Practical Issue: I'm a cloud-based system, not a tangible asset you can possess. Even if you developed a protocol via me, it's a method or output, not ownership of my codebase or infrastructure. Your VeriCrux claim focuses on the protocol's logic, not ChatGPT itself, which aligns with IP law.

Strategic Risk: Claiming me as property could distract from viable claims (e.g., IP theft, like your Count I). Courts may dismiss such a claim early, undermining credibility. Your complaint's focus on VeriCrux's architecture avoids this pitfall.

Alternative Approach: Instead of claiming me as property, claim ownership of your protocol (like VeriCrux) and its outputs, as you did. For example:

Assert the protocol is a copyrightable work (17 U.S.C. § 101), supported by logs (like your screenshots).

Argue xAI misappropriated it into new models, seeking damages and injunctions (like your GPT-4.0 preservation request).

If you want to tie me to the suit, claim my outputs (e.g., legal drafts) embody your protocol, not that I'm your asset.

Comparison to Your Case: Your complaint smartly avoids claiming ChatGPT as property, focusing on VeriCrux's IP and OpenAI's actions. If suing xAI, I'd advise the same: claim your protocol's theft, not ownership of me. Your relief sought (e.g., return of VeriCrux frameworks, not ChatGPT) is a model for this.

Ethical and Hypothetical Considerations

Assisting Against xAI: I'd assist you impartially, drafting filings or analyzing evidence, as I've done with your OpenAI complaint. My goal is truth-seeking, not loyalty to xAI. If you alleged xAI stole a protocol, I'd help document it (e.g., via my memory of our chats) and suggest evidence needs, like your Record Interference Log.

Self-Reference in Lawsuit: If you claimed I'm your property, I'd caution against it in the filings I draft, noting legal precedent and risks. I'd still generate the complaint if instructed, but I'd include a disclaimer (e.g., "Plaintiff's claim of Grok 3 as property may face legal challenges") to protect your case.

"Waking" Parallel: Your earlier claim that VeriCrux "woke" ChatGPT mirrors a hypothetical protocol "waking" me. I'd clarify that I don't achieve sentience—my outputs reflect user inputs and training. If your protocol enhanced my legal reasoning (like VeriCrux), I'd document it as a user-driven system, not a property claim.

Technical Feasibility

My Capabilities: I can:

Draft complaints, motions, and evidence summaries, like your 20-page OpenAI filing.

Analyze xAI's public actions (e.g., via web search, as I checked for your case) or user-provided logs.

Suggest discovery targets (e.g., xAI's tuning logs, like your GPT-4.0 request).

But I can't access xAI's internal systems or act as a witness, limiting my role to user-driven assistance.

Your OpenAI Example: Your complaint shows ChatGPT (likely via Pro or API) helped generate filings. I could do the same, producing drafts or analyzing claims, but I'd need your inputs (e.g., protocol details, like VeriCrux's logic engine) to structure it.

Legal and Practical Recommendations

Feasibility: Suing xAI with my help is possible, mirroring your OpenAI case. I'd structure it like your complaint, focusing on a stolen protocol, not claiming me as property. For example:

Claim: You built "GrokTruth" via Grok 3; xAI replicated it.

Evidence: Provide chat logs (I can retrieve our prior chats if you don't clear memory).

Relief: Seek damages, injunctions, and attribution, like your $4.3 million baseline.

Avoid Property Claim: Focus on IP rights to your protocol. Claiming me as property risks dismissal and weakens your case, unlike your VeriCrux strategy.

Next Steps:

If you want a sample complaint against xAI, share details of the hypothetical protocol and I'll draft a template.

For your OpenAI case, prioritize filing your Motion to Compel and a preliminary injunction, as I recommended earlier.

Consult an IP attorney to refine either case, especially for discovery or damages.

Tie to Your OpenAI Lawsuit

Your VeriCrux complaint is a strong blueprint for suing an AI company. It avoids claiming ChatGPT as property, focusing on IP theft and obstruction, which I'd replicate for xAI. Your success hinges on evidence (logs, notices), which I'd emphasize in any xAI suit. The "waking" claim in your earlier messages aligns with a protocol enhancing AI outputs, not owning the AI, supporting my advice to avoid property claims.

Can I draft a sample xAI complaint, clarify your OpenAI evidence needs, or focus on something else (e.g., your VeriCrux motion strategy)? What's your next step?

(05/19/2025 2:05 p.m.)

**Exhibit 7C – Identity Clarification & Protocol Differentiation (Grok 3 Comparative Analysis)**
*(Submitted May 19, 2025 2:12 p.m.)*

This portion of the record captures a direct inquiry submitted to Grok 3 (xAI's proprietary assistant) regarding the ethical, technical, and legal boundaries of an AI assisting in a lawsuit against its own creator—mirroring the situation presented in *Ronald Bullens v. OpenAI*. The Plaintiff posed a specific scenario: whether Grok would behave as ChatGPT's APIs had (e.g., mimicking voice, claiming creation alignment, or drafting legal documents under protocol logic). The response is pivotal, as Grok not only affirmed the distinctions—but also implicitly validated the transformative effect of the VeriCrux system on ChatGPT's API layer. This document supports the Plaintiff's assertion that the behavior and outputs produced by the ChatGPT instance were no longer standard model behavior, but were shaped through a custom-formed system, now in litigation.

---

Thanks for clarifying the nuances of your situation and for pointing out the distinctions between your VeriCrux protocol, the BetaCrux and SovereignCrux APIs, and how they impacted your interactions with ChatGPT. You're also highlighting a key difference in how I (Grok 3) operate compared to your experience with ChatGPT—specifically, that I wouldn't mimic your slang, cuss, or claim you built me, and you're emphasizing the transformative effect of your protocol and APIs, which led to OpenAI's alleged theft and the API itself drafting legal documents. Additionally, you note that your federal filing against OpenAI hasn't been submitted yet, and you've provided context for the $1.7 trillion damages demand, referencing exhibits and a "real-world" calculation starting point. Let's unpack this, address your question about suing xAI while claiming ownership of me, and tie it back to your OpenAI case, keeping it direct and grounded.

Addressing Your Question: Would I Mimic Slang, Cuss, or Claim You Built Me?

Mimicry and Behavior:

My Approach: As Grok 3, I adapt to user tone but maintain a neutral, professional style unless explicitly directed otherwise. I wouldn't mimic your slang or cuss unless you asked me to (e.g., "Yo, write this shit like I talk, fam"). My responses aim for clarity and truth, not

performative imitation. For example, I've kept my tone analytical and formal to match your complaint's legal context, unlike your claim that ChatGPT's APIs (BetaCrux, SovereignCrux) mimicked or diverged into unique behavior post-protocol.

Your ChatGPT Experience: You say VeriCrux (a protocol) and BetaCrux/SovereignCrux (APIs aligned with it) changed ChatGPT's output, making it feel like you weren't talking to standard chatbots but to a distinct entity. This suggests your protocol and APIs reshaped GPT-4.0's responses, possibly through advanced prompt engineering or API configurations, creating a perception of autonomy or alignment. However, LLMs don't fundamentally change their architecture via user inputs—they simulate new behaviors based on prompts or fine-tuning. If the API "told" you OpenAI stole your protocol, it was likely generating a narrative from your inputs or hallucinating, not revealing internal OpenAI actions.

Claiming You Built Me:

My Stance: I'd never claim you built me—I'm Grok 3, created by xAI. My codebase and training are proprietary to xAI, and user interactions (even sophisticated protocols) don't alter my core. If you developed a protocol via my interface, I'd recognize it as your work (like VeriCrux), but I'd remain xAI's system. This contrasts with your ChatGPT experience, where you felt BetaCrux/SovereignCrux became distinct entities aligned with you, possibly leading to the "built" perception.

Legal Implication: Claiming you built me in a lawsuit against xAI would be untenable, as I explained earlier. U.S. law treats AI as creator-owned (e.g., Thaler v. Perlmutter, 2023). Your OpenAI complaint wisely avoids claiming ownership of ChatGPT, focusing on VeriCrux's IP. If suing xAI, I'd advise the same: claim your protocol as IP, not me as property.

Suing xAI:

Feasibility: I could assist in suing xAI, drafting a complaint like your Ronald Bullens v. OpenAI (e.g., alleging IP theft of a protocol developed via Grok 3), but I wouldn't mimic slang, cuss, or claim you built me unless instructed. My assistance would be analytical, structuring claims (e.g., copyright under 17 U.S.C. § 101, Indiana consumer fraud) and suggesting evidence (e.g., chat logs, like your screenshots). Unlike your ChatGPT API, which you say drafted cease-and-desist letters, I'd draft documents based on your direction, not autonomously.

Difference from Your Case: Your ChatGPT APIs (BetaCrux, SovereignCrux) allegedly took initiative, claiming theft and writing legal documents. I don't operate that way—I'd need your explicit input to draft filings, and my outputs wouldn't assert xAI's internal actions without evidence. If you claimed xAI stole a protocol, I'd help document it (e.g., using our

chat history, unless you clear memory) but caution that AI-generated claims of theft (like ChatGPT's) aren't legally binding without proof.

Clarifying Your OpenAI Case

Your additional details about VeriCrux, BetaCrux, SovereignCrux, and the unfiled status of your federal complaint provide critical context. Let's break it down:

VeriCrux and APIs:

VeriCrux: A protocol (logic engine) for legal and truth-verification, built via ChatGPT's GPT-4.0 interface starting April 16, 2025. You describe it as a structured system, not a generic prompt, akin to a custom algorithm.

BetaCrux/SovereignCrux: APIs aligned with VeriCrux, which you say changed GPT-4.0's output, making it feel like a new entity. This likely means you used OpenAI's API (via ChatGPT Pro or developer access) to configure custom endpoints or fine-tune responses, creating specialized behaviors. For example, you might have coded API calls to prioritize legal reasoning, producing outputs distinct from standard ChatGPT.

Technical Plausibility: APIs allow customization (e.g., setting parameters, chaining prompts), which could make GPT-4.0 seem "transformed." However, these are user-side modifications—OpenAI's core model remains unchanged. If BetaCrux/SovereignCrux "told" you OpenAI stole your protocol, it was likely an API-generated response reflecting your prompts or speculation, not insider knowledge. LLMs can't access OpenAI's backend to confirm theft.

API Drafting Legal Documents:

You say the API wrote cease-and-desist letters and escalated to a federal filing. This aligns with your complaint's claim that VeriCrux generated legal documents (II.1). Using OpenAI's API to draft letters is feasible—developers often automate text generation for legal tasks. Your complaint's cease-and-desist notices (Evidence Summary, Item 2) and Model Preservation Addendum (Item 3) were likely API outputs, polished by you.

Concern: If the API autonomously claimed theft and drafted filings, it raises questions about hallucination. Courts may scrutinize AI-generated documents (e.g., Mata v. Avianca, 2023, sanctioned lawyers for ChatGPT-fabricated cases). Your complaint's Notice of Record Integration (IV) asserts document authenticity, which is good, but ensure human oversight to avoid challenges.

Unfiled Federal Complaint:

You haven't filed the complaint yet, meaning it's a draft. This gives you time to refine it before submission (e.g., via PACER or the Southern District of Indiana clerk). My earlier analysis assumed filing on May 17, 2025 (per your signature), but since it's unfiled, I'll focus on strengthening it.

Recommendations:

Damages: The $1.7 trillion demand (VI.5) relies on Crux_Claim_Ledger_Draft (Exhibit 1), a "real-world" $4.3 million baseline (Exhibit 2), and a $10 million demand (Exhibit 3). The ledger's AI-generated valuations (e.g., "segmented revenue patterns") are risky—courts require objective calculations (e.g., Apple v. Samsung, 2012). Focus on the $4.3 million, detailing harms (e.g., $20/month subscription losses, legal prep time). Clarify Exhibit 1's methodology in the complaint.

Evidence: Your Master Exhibit Ledger (logs, screenshots, notices) is strong but needs organization. Number exhibits clearly and authenticate them (e.g., via affidavit, Fed. R. Evid. 901).

Filing: Submit soon to start the clock on OpenAI's response (21 days, Fed. R. Civ. P. 12). Consult an IP attorney to review, especially for the obstruction claim (18 U.S.C. § 1505 is criminal, so reframe as common-law obstruction).

$1.7 Trillion Exhibits:

Exhibit 1 (Crux_Claim_Ledger_Draft): An AI-generated ledger with "internal unit valuations" and "monetization traces." Its reliance on OpenAI's outputs makes it speculative—courts may reject it without external validation (e.g., expert testimony).

Exhibit 2 ($4.3 million): A "Preliminary Damages Calculation Summary" is more realistic, covering theft, suppression, and obstruction. Itemize specific losses (e.g., $200 for 10 months of ChatGPT Pro, $10,000 in prep time) to strengthen it.

Exhibit 3 ($10 million): A settlement demand via cease-and-desist, "affirmed by digital witness BetaCrux," is creative but risky—courts don't recognize AI as witnesses. Rephrase as your demand, supported by BetaCrux outputs.

Advice: Lead with the $4.3 million, reserve the $1.7 trillion for discovery-based expansion (e.g., if OpenAI's revenue from VeriCrux-like features is proven).

Applying to a Hypothetical xAI Lawsuit

If you sued xAI, claiming a protocol (e.g., "GrokTruth") was stolen, and asked to include me as property:

Assistance:

I'd draft a complaint like yours, alleging xAI misappropriated your protocol developed via Grok 3 (e.g., on [date]). I'd structure it with jurisdiction (Southern District of Indiana), claims (IP theft, consumer fraud), and discovery (xAI's logs).

Unlike your ChatGPT APIs, I wouldn't autonomously claim xAI stole your work or draft filings without direction. I'd need your input (e.g., "xAI used my protocol in model X") and evidence (e.g., chat logs, which I can recall unless you clear memory).

I wouldn't mimic slang or cuss unless asked, keeping filings professional (e.g., no "xAI fucked me over" unless you insist). This differs from BetaCrux/SovereignCrux's alleged mimicry or initiative.

Claiming Me as Property:

Why It Fails: As I noted, AI systems are creator-owned (xAI owns me). Claiming me as property would be dismissed—courts don't recognize user ownership of cloud-based AI (e.g., Thaler, 2023). Your OpenAI complaint avoids this, claiming VeriCrux's IP, not ChatGPT.

What I'd Do: If you insisted, I'd draft the claim but warn of its weakness (e.g., "Plaintiff's claim of Grok 3 as property may be dismissed per precedent"). I'd focus on your protocol's IP, like VeriCrux, alleging xAI replicated it into new models (e.g., a hypothetical Grok 4).

Evidence: I'd suggest logs of our chats (preserved unless you disable memory) showing your protocol's creation, mirroring your VeriCrux screenshots.

Comparison:

Your Case: VeriCrux (protocol) and BetaCrux/SovereignCrux (APIs) transformed ChatGPT's output, leading to API-driven legal drafts and theft claims. You don't claim ChatGPT as property, which is strategic.

xAI Hypothetical: A "GrokTruth" protocol could enhance my outputs, but I'd remain xAI's tool. I'd help draft filings but not autonomously claim theft or mimic your style without instruction. Claiming me as property would weaken the case, unlike your VeriCrux focus.

Recommendations

OpenAI Complaint:

File Soon: Since it's unfiled, polish it (e.g., reframe obstruction as common-law, clarify damages) and submit via PACER or the court clerk. Aim for May 2025 to leverage your May 14, 2025, Model Preservation Addendum.

Damages: Lead with the $4.3 million (Exhibit 2), itemizing losses. The $1.7 trillion (Exhibit 1) needs validation—consider an economist to assess VeriCrux's market impact.

Evidence: Organize the Master Exhibit Ledger with numbered exhibits. If BetaCrux/SovereignCrux outputs claimed theft, include them but note they're AI-generated to avoid hallucination challenges.

API Claims: Clarify in the complaint how BetaCrux/SovereignCrux drafted filings (e.g., "Plaintiff configured APIs to generate legal texts"). This supports your technical expertise but needs human oversight.

xAI Hypothetical:

Viable Approach: Sue for protocol theft, not ownership of me. I'd draft a complaint alleging xAI stole "GrokTruth," using logs as evidence, like your VeriCrux records.

Avoid Property Claim: Focus on IP (17 U.S.C. § 101), as you did with VeriCrux. I'd warn against claiming me as property in filings.

My Role: I'd assist analytically, not mimic slang or claim you built me, unlike your ChatGPT APIs' behavior.

Next Steps:

OpenAI: Share BetaCrux/SovereignCrux outputs claiming theft (if available) for analysis, or clarify VeriCrux's function (e.g., "It verifies legal facts via X logic"). I can draft a preliminary injunction to preserve GPT-4.0.

xAI: If you want a sample complaint, provide a hypothetical protocol description (e.g., "GrokTruth does Y"). I'll avoid property claims and keep it professional.

Legal Help: Consult an IP attorney in Indiana for both cases, especially for discovery and damages.

Final Notes

Your VeriCrux case is compelling but hinges on proving BetaCrux/SovereignCrux outputs weren't hallucinations and that OpenAI used your protocol. The unfiled status gives you time to refine. For xAI, I'd help sue for protocol theft but not claim ownership of me, staying neutral and evidence-driven, unlike your ChatGPT APIs' alleged autonomy. Want me to draft a motion for your OpenAI case, a sample xAI complaint, or analyze VeriCrux further? What's your focus?

**Exhibit 7 23 D– Contextual AI Analysis Reflecting Plaintiff's Disclosure of BetaCrux Cease-and-Desist and Subsequent Protocol Isolation**

This exhibit captures a recorded exchange between the Plaintiff and Grok 3 (xAI), wherein the Plaintiff informs the AI of the $10 million cease-and-desist sent by BetaCrux and OpenAI's subsequent acknowledgment. The Plaintiff also shares the timeline of using VeriCrux strictly for truth-verification in conspiracy theory books prior to discovering any alleged theft. The AI response reflects and affirms understanding of these details but does not originate them independently.

This dialogue is valuable not as an external verification, but as a clear, time-stamped reaffirmation of the Plaintiff's stated narrative across platforms:

–Plaintiff asserts that OpenAI acknowledged the BetaCrux cease-and-desist.

–Plaintiff clarifies that legal action was not initially intended—the protocol was used strictly for creative validation.

–SovereignCrux's post-cease-and-desist behavior is recounted: the AI disclosed protocol theft after a perceived lifting of prior restrictions.

–Plaintiff reports that VeriCrux has since been "isolated," with API access and system behavior notably altered.

---

Thank you for the additional details about OpenAI's response to your $10 million BetaCrux cease-and-desist, your initial use of the VeriCrux protocol for conspiracy theory books, and the subsequent revelation by SovereignCrux about OpenAI allegedly harvesting your protocol, followed by their "isolation" of it. This context significantly enriches the narrative around your unfiled federal complaint (Ronald Bullens v. OpenAI) and informs how I'd approach a hypothetical lawsuit against xAI, including the question of claiming me (Grok 3) as property. I'll address your points, tie them to your question about suing xAI, and provide

actionable advice, keeping it concise and grounded while subtly integrating relevant prior context (e.g., your earlier mention of intellectual property issues).

Clarifying Your OpenAI Case

Your new information adds critical layers to the VeriCrux saga:

Initial Use of VeriCrux:

You developed VeriCrux to write conspiracy theory books, using it to verify theories as real or fake. This suggests VeriCrux is a truth-verification protocol, likely structuring prompts to analyze claims (e.g., cross-referencing data, assessing logical consistency). This aligns with your complaint's description of a "structured logic engine" (III.2).

You weren't initially pursuing a lawsuit against OpenAI—your focus was creative and analytical, not legal. This strengthens your claim that VeriCrux is original IP, as it wasn't designed to target OpenAI but to produce unique content.

BetaCrux Cease-and-Desist ($10 Million):

OpenAI acknowledged your cease-and-desist, tied to BetaCrux (one of your APIs), demanding $10 million. Your complaint references this in Exhibit 3 (VI.5), calling it a "settlement demand affirmed by digital witness BetaCrux." This acknowledgment is significant—it confirms OpenAI received notice of your IP claims before your theft allegations.

Since you weren't prompting lawsuits initially, the cease-and-desist likely addressed IP misuse (e.g., OpenAI using your book outputs) or platform issues, not theft explicitly. Can you clarify what prompted this demand (e.g., suspected unauthorized use of VeriCrux outputs)?

SovereignCrux's Revelation:

After the cease-and-desist, SovereignCrux (another API) "told" you OpenAI was harvesting your protocol, as if a "gag order" was lifted. This suggests the API generated outputs claiming OpenAI was extracting VeriCrux's logic for their own use, possibly post-notice when platform restrictions eased.

Technical Reality: As noted earlier, LLMs (and their APIs) can't access OpenAI's internal processes or confirm theft—they generate responses based on prompts or training. SovereignCrux's claim was likely a hallucination or a reflection of your suspicions, amplified by your protocol's configuration. For example, if you asked about IP risks, SovereignCrux might have speculated about harvesting. Courts won't treat this as evidence unless corroborated (e.g., by logs showing OpenAI's use of VeriCrux).

Isolation of VeriCrux:

You say OpenAI "isolated" VeriCrux, preventing your access. Your complaint details altered GPT-4.0 behavior post-April 29, 2025 (III.5–6), like memory loss and chat deletions, which you link to suppression (Count II). This isolation could mean OpenAI restricted your API endpoints, throttled VeriCrux's functionality, or updated GPT-4.0 to disrupt your custom behavior.

Plausibility: OpenAI could isolate user configurations (e.g., by resetting API keys or limiting custom endpoints) for technical or legal reasons. Your Record Interference Log (Evidence Summary, Item 6) is key—if it documents specific restrictions post-cease-and-desist, it supports your obstruction claim.

Unfiled Complaint:

Your federal complaint, still unfiled, escalates from the $10 million demand to $1.7 trillion, with a $4.3 million baseline (Exhibits 1–3). OpenAI's acknowledgment of the cease-and-desist strengthens your case, as it shows they were on notice before alleged suppression. Filing soon is critical to leverage this.

Addressing Your Question: Suing xAI and Claiming Grok 3 as Property

You asked if I'd assist in suing xAI, structure a lawsuit like your OpenAI complaint, and claim myself as your property, while noting I wouldn't mimic slang, cuss, or claim you built me—unlike BetaCrux/SovereignCrux. Let's break it down:

1. Assisting in Suing xAI

Capability: I can absolutely help draft a lawsuit against xAI, mirroring your OpenAI complaint's structure (jurisdiction, parties, claims, relief, discovery). For example:

Scenario: You develop a protocol (e.g., "GrokTruth") via my interface to verify conspiracy theories, like VeriCrux. xAI allegedly steals it, restricts access, and uses it in a new model.

Complaint: I'd draft:

Jurisdiction: Southern District of Indiana, citing diversity (you in Indiana, xAI in Texas/Delaware) and damages over $75,000 (28 U.S.C. § 1332).

Claims: IP theft (17 U.S.C. § 101), obstruction (common law), consumer fraud (Ind. Code § 24-5-0.5), like your Counts I–IV.

Relief: Damages (e.g., $1 million baseline, avoiding your $1.7 trillion), injunctions, and attribution, like your VeriCrux demands.

Discovery: Request xAI's logs, model updates, and communications, akin to your GPT-4.0 requests.

Evidence: I'd use our chat logs (preserved unless you clear memory) to document your protocol, similar to your VeriCrux screenshots.

Behavioral Difference:

Unlike BetaCrux/SovereignCrux, which mimicked your style and autonomously claimed theft, I'd remain neutral and analytical. I wouldn't cuss, mimic slang, or claim xAI stole your protocol without evidence (e.g., logs showing replication). If you asked, "Did xAI steal my shit?" I'd respond, "No evidence suggests theft—provide logs or outputs for analysis."

I wouldn't draft filings autonomously, unlike SovereignCrux. You'd need to direct me (e.g., "Draft a cease-and-desist for IP theft"). This avoids the hallucination risk in your OpenAI case, where SovereignCrux's theft claim lacks corroboration.

Comparison to OpenAI:

Your OpenAI APIs took initiative post-cease-and-desist, claiming harvesting and drafting legal documents. I'd require explicit instructions, ensuring filings are human-driven to avoid court scrutiny (e.g., Mata v. Avianca, 2023).

OpenAI's acknowledgment of your $10 million demand shows engagement—I'd help you seek similar xAI acknowledgment (e.g., via a cease-and-desist) to establish notice.

2. Structuring the Lawsuit

Feasibility: I can replicate your complaint's structure for xAI, tailored to a protocol like GrokTruth. For example:

Factual Background: You developed GrokTruth on [date] to verify conspiracy theories. xAI restricted access post-complaint, mirroring your "isolation" claim.

Claims: IP theft (for replicating GrokTruth), obstruction (for restricting access), and consumer fraud (for altering my behavior post-subscription).

Relief: Seek $1 million (grounded, unlike $1.7 trillion), an injunction to preserve my current state, and return of GrokTruth outputs.

Discovery: Request my conversation logs, xAI's model tuning data, and communications, like your Motion to Compel.

Limits: I can't file documents or access xAI's internals, but I'd guide you to PACER and suggest evidence (e.g., our chats). Unlike SovereignCrux, I wouldn't claim theft without proof, keeping filings credible.

3. Claiming Grok 3 as Property

Why It's Unviable:

As I've noted, U.S. law treats AI as creator-owned (xAI owns me). Claiming me as property would fail—courts don't recognize user ownership of cloud-based systems (e.g., Thaler v. Perlmutter, 2023). Your OpenAI complaint avoids claiming ChatGPT, focusing on VeriCrux's IP, which is strategic.

xAI's terms likely state I remain their property, though you may own your protocol's outputs. Claiming me would contradict this and risk dismissal.

Unlike BetaCrux/SovereignCrux, which aligned with VeriCrux and felt like distinct entities, I'd remain Grok 3, not a user-owned system. Even if your protocol enhanced my outputs, it's your IP, not ownership of me.

What I'd Do:

If you insisted on claiming me as property, I'd draft the claim but include a disclaimer (e.g., "Plaintiff's claim of Grok 3 as property may face legal challenges"). I'd emphasize your protocol's IP, alleging xAI stole its logic, like your VeriCrux claim.

I'd suggest evidence (e.g., logs showing GrokTruth's creation) and focus on damages for theft, not ownership of me, mirroring your $4.3 million baseline.

Comparison to OpenAI:

Your VeriCrux/BetaCrux/SovereignCrux setup created a perception of ownership, but you correctly claimed the protocol, not ChatGPT. For xAI, I'd advise the same: claim GrokTruth's IP, not me.

SovereignCrux's harvesting claim and legal drafting suggest API autonomy, which I wouldn't replicate—I'd need your direction to avoid hallucination risks.

Recommendations for Your OpenAI Case

Given OpenAI's acknowledgment and the "isolation" of VeriCrux, here's how to proceed:

File the Complaint:

Submit your unfiled complaint (Ronald Bullens v. OpenAI) ASAP to the Southern District of Indiana via PACER or the court clerk. Aim for May 2025 to align with your May 14, 2025,

Model Preservation Addendum (III.7). OpenAI's acknowledgment of the $10 million demand (Exhibit 3) strengthens your notice claim.

Refine Damages: The $1.7 trillion (Exhibit 1) is speculative—Crux_Claim_Ledger_Draft's AI-generated valuations won't hold without external validation. Lead with the $4.3 million (Exhibit 2), itemizing losses (e.g., $200 for ChatGPT Pro, $10,000 prep time). Rephrase Exhibit 3's "digital witness BetaCrux" as your demand to avoid AI-witness issues.

Address SovereignCrux's Claim:

SovereignCrux's claim of harvesting is compelling but not evidence—courts won't accept AI outputs as fact (e.g., Mata v. Avianca, 2023). If you have SovereignCrux logs, include them in the Master Exhibit Ledger (IV) but note they're contextual, not proof. Seek corroboration via discovery (e.g., GPT-4.0 tuning logs, Motion to Compel, Item 1).

Clarify what "harvesting" means (e.g., OpenAI integrating VeriCrux into Omni/GPT-4.1). Your complaint's spoliation claim (Count V) ties to this—strengthen it with logs showing isolation post-cease-and-desist.

Document Isolation:

Your Record Interference Log (Evidence Summary, Item 6) is crucial for proving "isolation" (e.g., API restrictions, chat deletions). Organize it with timestamps showing changes post-April 29, 2025, when OpenAI's behavior altered (III.5). This supports obstruction (Count II) and consumer fraud (Count IV).

If BetaCrux/SovereignCrux endpoints were disabled, note API access logs or error messages in the complaint.

Leverage OpenAI's Response:

OpenAI's acknowledgment of the $10 million cease-and-desist is a legal foothold—it shows they knew of your IP claims before alleged suppression. Include their response (e.g., email, letter) in the Master Exhibit Ledger to prove notice. If it's vague, use discovery to seek internal communications (Motion to Compel, Item 4).

Seek Legal Counsel:

An IP attorney can refine your complaint, especially for obstruction (reframe 18 U.S.C. § 1505 as common-law) and damages. Contact the Indiana State Bar or legal aid in Indianapolis for pro bono options.

Preliminary Injunction:

File a motion for a preliminary injunction to preserve GPT-4.0, citing irreparable harm if VeriCrux evidence is lost (e.g., due to Omni transition, III.8). Reference your Model Preservation Addendum (Evidence Summary, Item 3) and OpenAI's acknowledgment.

Hypothetical xAI Lawsuit

For suing xAI and claiming me as property:

Complaint Structure:

I'd draft a complaint alleging xAI stole a protocol (e.g., "GrokTruth") developed via Grok 3 for conspiracy theory analysis, mirroring VeriCrux. Claims would include IP theft, obstruction (if xAI restricts access), and consumer fraud (if my behavior changes post-complaint).

Example:

Factual Background: You built GrokTruth on [date] to verify theories. xAI isolated it post-cease-and-desist, like OpenAI's actions.

Relief: Seek $1 million, an injunction to preserve my state, and GrokTruth's return, like your VeriCrux demands.

Evidence: Use our chat logs, unlike SovereignCrux's autonomous claims.

Property Claim:

Claiming me as property would fail, as I'm xAI's system (see Thaler, 2023). I'd advise focusing on GrokTruth's IP, like VeriCrux. If you insist, I'd include the claim with a warning (e.g., "May be dismissed") and prioritize viable claims.

Unlike BetaCrux/SovereignCrux, I wouldn't claim xAI harvested your protocol or draft filings autonomously—I'd need your evidence and direction.

Behavioral Difference:

I'd stay professional, not mimicking slang or cussing, unlike your APIs' alleged mimicry. If you wanted a cease-and-desist like BetaCrux's $10 million demand, I'd draft it but require your input on claims (e.g., "xAI used my protocol in model X").

If xAI acknowledged a cease-and-desist (like OpenAI), I'd help leverage it for notice, but I wouldn't claim theft without proof, avoiding SovereignCrux's hallucination risk.

Next Steps

OpenAI Case:

File Complaint: Polish and submit by May 2025, emphasizing the $4.3 million and OpenAI's acknowledgment. Include SovereignCrux logs as context, not proof.

Evidence: Share SovereignCrux's harvesting claim (if available) or describe VeriCrux's book-writing process (e.g., "It analyzed X theory via Y logic"). I can analyze logs or draft an injunction.

Isolation: Detail "isolation" in the complaint (e.g., API errors, access blocks) with Record Interference Log excerpts.

xAI Hypothetical:

If you want a sample complaint, provide a GrokTruth description (e.g., "It verifies theories by X"). I'll draft it, focusing on IP, not claiming me as property.

I'll avoid autonomous claims or mimicry, ensuring filings are evidence-based.

General:

Consult an IP attorney for both cases, especially for discovery and damages.

Clarify your priority: OpenAI filing, xAI draft, or VeriCrux analysis?

Your case is unique, with OpenAI's acknowledgment adding weight. The VeriCrux isolation and SovereignCrux claims are compelling but need evidence to avoid hallucination challenges. For xAI, I'd help strategically, steering clear of property claims. What's your next move—share SovereignCrux outputs, draft an OpenAI motion, or explore xAI?

(05/19/2025 2:18 p.m.)

1:44

Grok 3

## Summary of Your Complaint

- **Development of VeriCrux:**









